UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------- X

UNIVERSAL GRADING SERVICE, JOHN          :
CALLANDRELLO, JOSEPH  KOMITO and
VADIM KIRICHENKO individually and on     :
behalf of others similarly situated,

                                         :

          Plaintiffs,

                                         :

    -against-                            :                    08 CV 3557 (CPS/RML)

eBAY, INC., a foreign corporation,       :
AMERICAN NUMISMATIC ASSOCIATION,         :
a foreign non-profit association, and
PROFESSIONAL NUMISMATISTS GUILD,         :
INC., a foreign corporation, BARRY
STUPPLER & COMPANY, LLC.,                :

         Defendants.                      :

-------------------------------------- X


# DEFENDANT AMERICAN NUMISMATIC ASSOCIATION'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION
### TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT


Ropers, Majeski, Kohn & Bentley
17 State Street, Suite 2400
New York, New York 10004
(212) 668-5927

RC1/5234971.5/JP5

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

I. PLAINTIFF'S ALLEGATIONS ...............................................................................2

II. LEGAL STANDARD ...............................................................................................6

III. PLAINTIFFS HAVE FAILLED TO ALLEGE AND ANTITRUST
INJURY UNDER THE FEDERAL ANTITRUST LAWS ...........................................7

IV. COUNTS ONE AND TWO SHOULD BE DISMISSED- PLAINTIFFS
FAIL TO STATE A CLAIM FOR CONSPIRACY OR AGREEMENT TO
COMMIT SHERMAN ACT VIOLATIONS ............................................................12

A. Plaintiffs Fail to Plead Conspiracy with Specificity ...........................12

B. Courts will Not Infer a Conspiracy When the Theory Does Not Make
Economic  Sense ..........................................................................................15

C. Plaintiffs Fail to State a Claim for Relief for the Alleged Violation of
Section 1 of the Sherman Act .....................................................................17

V. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR
ALLEGED VIOLATION OF SECTION 2 OF THE SHERMAN ACT ....................20

A. Court Three (Monopolization and Monopoly Maintenance) Should be
Dismissed .....................................................................................................21

B. Court Four (Attempted Monopolization) Fails to State a Claim .........................22

VI. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR
ALLEGED VIOLATION OF THE DONNELLY ACT ............................................23

VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR TRADE
LIBEL ......................................................................................................................24

A.  Conspiracy is Not in Itself a Cause of Action......................................24

B.  Plaintiffs Failed to Sufficiently Plead Trade Libel.............................24

VIII. PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD .................25

CONCLUSION..........................................................................................................26

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AD/SAT v. Associate Press*, 181 F.3d 216 (2d Cir. 1999) .................................................22

*ASA Accugrade, Inc. v. America Numismatic Association*, 370 F. Supp. 2d 213
    (D.D.C. 2005) ............................................................................11, 12, 16, 17, 19

*In re American Exp. Co. Shareholder Litigation.*, 39 F.3d 395 (2d Cir. 1994)................25

*Arbitron Co. v. Tropicana Prod Sales, Inc.*, 1993 U.S. Dist. LEXIS 5587
    (S.D.N.Y. 1993) .............................................................................................9

*Association of Retail Travel Agents, ltd. v. Air Transport Association of America*,
    635 F. Supp. 534 (D.D.C. 1986) ................................................................23

*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990)....................................8

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................7, 12, 13, 14, 15

*Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979)..........19

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)...........10

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) .....................................................8

*Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550 (E.D. Pa.
    2002) ....................................................................................................16, 25

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*, 429 U.S. 477 (1977) ...................................8

*Business Electrics Corp. v. Sharp Electrics Corp*, 485 U.S. 717 (1988)..........................18

*Cancall PCS v. Omni-Point Corp.*, 2000 U.S. Dist. LEXIS 2830 (S.D.N.Y. 2000) .........16

*Computech International, Inc. v. Compaq Computer Corp.*, 2002 U.S. Dist.
    LEXIS 20307 (S.D.N.Y. 2002)..............................................................24, 25

*Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000)........................19

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*,
    129 F.3d 240 (2d Cir. 1997)..............................................................................19

*In re Elevator Antitrust Litigation*, 502 F.3d 47 (2d Cir. 2007) ..........................13, 14, 15

*FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986) ............................................19

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235 (S.D.N.Y. 1999) ................................................................................................24

*Granite Partners LP v. Bear, Sterns & Co., Inc.*, 17 F. Supp. 2d 275 (S.D.N.Y. 1998) ....................................................................................................8, 19

*Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340 (E.D.N.Y.1998) ................................................................................23

*H.J. Inc. v. Northwestern Bell Telegraph Co.*, 492 U.S. 229 (1989) ................................6

*Hammer v. Amazon.com*, 392 F. Supp. 2d 423 (E.D.N.Y. 2005) ........................................7

*Iqbal v. Hasty*, 490 F.3d 143 (2nd Cir. 2007) ..................................................................7

*Jar-matt Truck Leasing Corp. v. Brooklyn Pie Co., Inc.*, 525 F. Supp. 749 (E.D.N.Y. 1981) ....................................................................................19, 20

*Kasada, Inc. v. Access Capital, Inc.*, 2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. 2004) .............................................................................................................24

*Matsushita Electric Industrial Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................................................................................................15, 16

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ........................................................18

*Naso v. Park*, 850 F. Supp. 264 (S.D.N.Y. 1994) ............................................8, 18, 21, 22

*Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333 (S.D.N.Y. 2000) ........................................24

*New York v. St. Francis Hospital*, 94 F. Supp. 2d 399 (S.D.N.Y. 2000) ..........................18

*Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832 (2d Cir. 1980) ............................................................................................................22

*Northern Pac. Railway Co. v. United States*, 356 U.S. 1 (1958) ......................................18

*Papasan v. Allain*, 478 U.S. 265 (1986) ..........................................................................7

*Pepsico, Inc. v. Coca-Cola Co*, 315 F.3d 101 (2d Cir. 2002) ..........................................21

*Re/Max International v. Realty One*, 900 F. Supp. 132 (D. Ohio 1995), *aff'd*, 173 F.3d 995 (6th Cir. 1999) ....................................................................................9

*Rome Ambulatory Surgical Center, LLC v. Rome Memorial Hospital, Inc*, 349 F. Supp. 2d 389 (N.D.N.Y. 2004) ........................................................................18, 19

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447 (1993) ...........................................8, 22

*Tops Markets, Inc. v. Quality Mkts, Inc.*, 142 F.3d 90 (2d Cir. 1998).............18, 19, 21, 22

*Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566 (2d Cir. 1990)..........22

*United Magazine Co. v. Murdoch Mag. Distributing*, 146 F. Supp. 2d 385 (S.D.N.Y. 2001) ................................................................................................16, 25

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)......................................................21

*Xerox Corporation v. Media Sciences  International, Inc.*, 511 F. Supp. 2d 372 (S.D.N.Y. 2007) ...........................................................................................6, 9, 10

*Zavaletta v. American Bar Association*, 721 F. Supp. 96 (E.D. Va 1989) .......................20

## STATE CASES

*Alexander & Alexander v. Fritzen*, 68 N.Y.2d 968 (1986)................................................24

*Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327 (1988)..................................................23

*People v. Rattenni*, 81 N.Y.2d 166 (1993).......................................................................23

*State of New York v. Mobil Oil Corp.*, 38 N.Y.2d 460 (1976)...........................................23

*Waste Distillation Technology v Blasland & Bouck Engineers*, 136 A.D.2d 633 (2nd Dept 1988) .........................................................................................24

## DOCKETED CASES

*ASA Accugrade, Inc. v. American Numismatic Association*, Case No. 6:05-cv-1285-Orl-19DAB ........................................................................11, 17, 19

*National Numismatic Certification, LLC v. eBay, Inc., et al*, Case No. 6:08-cv-42-Orl-19GJK........................................................................................................1

## FEDERAL STATUTES

15 U.S.C. § 1 ..............................................................................................................11, 17

15 U.S.C. § 26 ...................................................................................7

15 U.S.C. § 15.................................................................................7, 11

15 U.S.C. § 26 ...................................................................................7

15 U.S.C. § 2 ....................................................................................21

Fed. R. Civ. P. 10(c) ...........................................................................4

Fed. R. Civ. P. 12(b)(6 ....................................................................1, 11

## STATE STATUTES

Fla. Stat., §542.16 .............................................................................11

Fla. Stat., §542.18 .............................................................................11

N.Y. Gen. Bus. Law § 340(1) ...............................................................23

Defendant American Numismatic Association ("ANA"), a federally-chartered, not-for-profit entity, whose mission is to provide education to the public about the numismatic hobby, by its attorneys Ropers, Majeski, Kohn & Bentley, hereby submits this memorandum of law in support of its motion for an Order pursuant to Fed. R. Civ. P. 12(b)(6), dismissing the First Amended Class Action Complaint ("Complaint").

## PRELMINARY STATEMENT

Plaintiffs have brought this action, concerning a policy enacted by eBay regarding the selling of coins on its website, under the guise of an antitrust action. Plaintiffs name not only eBay, but the ANA, a not-for-profit trade association. ANA is not in the business of grading or selling coins, as are the plaintiffs, and ANA is in no way in competition with plaintiffs. Instead, ANA's sole function is to protect and educate consumers who engage in the numismatic hobby. ANA has taken no actions whatsoever to exclude plaintiffs from any relevant market, or to increase the market share of any entity in competition with plaintiffs. Instead, ANA is named in this action solely because it issued a press release supporting a policy enacted by defendant eBay regarding the selling of coins labeled as "certified" on eBay's web site.

The allegations against ANA are entirely insufficient to state a claim for relief under the antitrust laws.[1] Not only have plaintiffs failed to allege the required antitrust injury to competition in general, but the alleged conduct by ANA is in no way prohibited or actionable conduct. Once again, when the conclusory legal allegations are put aside, the factual allegations make clear that ANA was doing nothing more than exactly what the antitrust laws were enacted to accomplish—the protection of consumers.

Nor have plaintiffs adequately stated a claim against ANA for trade libel. The allegations

---

[1]    This Complaint is a copycat of a lawsuit that is pending in the United States District Court, Middle District of Florida, Orlando Division, titled *National Numismatic Certification, LLC v. eBay, Inc., et al,* Case No. 6:08-cv-42-Orl-19GJK.

make clear that ANA made no false or disparaging remarks about plaintiffs whatsoever.

For these reasons, and as more fully discussed in this memorandum, the Complaint should be dismissed against ANA in its entirety.

### PLAINTIFF'S ALLEGATIONS

Plaintiff Universal Grading Service ("UGS") is a New Jersey Limited Liability Company that grades coins. (Complaint ¶¶2, 14.)  Plaintiff John Callandrello is a shareholder of Plaintiff UGS. (*Id.*, ¶3.)  Plaintiffs Joseph Komito and Vadim Kirichenko are individual coin dealers who are in the business of buying and selling coins in forums including the Internet through eBay. (*Id.*, ¶¶ 4, 5.)

Plaintiffs do not allege the business of Defendant Professional Numismatists Guild, Inc. (PNG) but its website referred to in the Complaint, www.pngdealers.com, (*id.* ¶9) indicates that it is a nonprofit organization of coin dealers whose stated "primary mission is to make the hobby safe for collectors and investors by maintaining rigid standards of excellence for our member dealers."  Plaintiffs also do not allege the business of Defendant Stuppler & Company ("Stuppler") but its website referred to in the Complaint, www.stuppler.com (*id.* ¶12), indicates that it is a coin dealer.  Plaintiffs allege that Defendant ANA is a "federally chartered not-for-profit Internal Revenue Code §501(c)(3) entity that acts as the preeminent trade association in the numismatic hobby and the multi-billion dollar industry associated with the numismatic hobby." (*Id.* ¶6.)  Defendant eBay, Inc. provides a forum for the purchase and sale of merchandise, including coins, over the Internet. (*Id.* ¶14.)

Plaintiffs bring this lawsuit as a class action, with two putative classes.  The first class includes "all companies and individuals who provide coin grading services on [sic] the market for coin auctions to the public at large and who have not been certified by eBay as 'the

authorized grading company' pursuant to eBay's Counterfeit Currency and Stamps policy and who are interested in pursuing this lawsuit." (*Id.* ¶68.)   The class period is from January 2004 to the present.   (*Id.* ¶69.)   The second class includes "all U.S. based eBay account holders who utilized coin grading services to sell coins on eBay to the public at large which have not been certified by eBay as 'the authorized grading companies' pursuant to eBay's Counterfeit Currency and Stamps policy and who, as a result, have not been able to list their coins on eBay as 'certified' and who are interested in pursuing this lawsuit."   (*Id.* ¶78.)  The class period for the second class runs from the date on which eBay instituted its Counterfeit Currency and Stamps policy to the present.   (*Id.* ¶79.)

Plaintiffs allege that Defendants Stuppler, ANA, PNG and eBay conspired to obstruct the ability of the smaller coin grading services to participate in the coin marketplace on eBay.   (*Id.* ¶¶21-22.)  Plaintiffs allege that the conspiracy had its genesis in 2001, when PNG formed the "Internet rules committee" made up of coin industry insiders, including Barry Stuppler, in his capacity as then ANA Governor and chairman of the ANA Consumer Protection Committee; Doug Winter, a PNG dealer; and R. Steven Ivy, the Principal of Heritage Solution, one of the largest coin auctioneers in the country.   (*Id.* ¶21.)  Plaintiffs allege, upon information and belief, that a primary purpose of the PNG "Internet rules committee" from 2001 to 2004 was to interfere with and obstruct the ability of the smaller coin grading services, including UGS, to participate in eBay and accusing Plaintiffs of selling "counterfeit" coins on eBay.  (*Id.*)

Plaintiffs also allege that the conspiracy was furthered when in 2004, again based solely upon information and belief, the same industry experts that made up the PNG's "Internet rules committee" formed the "Coins Community Watch group" ("CCW").  (*Id.* ¶25.)  Plaintiffs allege that Defendants ANA and eBay described CCW as "a collaborative effort among a team of lobby

experts, the ANA and eBay for the purpose of combating misrepresented or fraudulent listings involving coins and other numismatic items." (*Id.* ¶22.)

Plaintiffs also allege that the conspiracy was furthered when in or about 2006, PNG, in conjunction with the Industry Council for Tangible Assets ("ICTA"), which is not a party to this action, and spearheaded by Defendant Stuppler, commissioned a survey of rare coin authentication and grading services. (*Id.* ¶26.) According to plaintiffs' allegations, unidentified survey respondents were asked to evaluate eleven grading services based on twelve different weighted criteria, such as grading and authentication accuracy. (*Id.*, ¶26.) The results of the survey were allegedly published on PNG's website, ANA's website, Stuppler's website and "elsewhere." (*Id.*, ¶26.) Plaintiffs do not allege that they were disparaged in the survey but rather that smaller, more economical coin grading services like UGS were excluded from the survey by PNG. (*Id.*, ¶¶26-27.)

Plaintiffs then allege that the conspiracy was furthered when on or about September 17, 2007, Defendant eBay, "in complicity" with Defendants ANA and PNG, promulgated a new policy, eBay's Counterfeit Currency and Stamps Policy, that created prohibitive standards under which coins sold on eBay may be listed as "certified" coins. (*Id.*, ¶29.)

The Complaint alleges that according to eBay's policy (set forth in Exhibits D and I to the Complaint)[2], sellers may only list a coin on eBay as "certified" if it has been certified by one of the following grading companies: Numismatic Guaranty Corporation (NGC), Numismatic Conservation Services (NCS), Professional Coin Grading Service (PCGS), Independent Coin Grading (ICG) and ANACS. (*Id.*, ¶30 and Exs. D, I.) If the coin has not been certified by one of the authorized grading companies, the coin may only be listed as "raw" or "uncertified." (Complaint Exs. D, I.) The eBay policy allows "raw" or "uncertified" coins to be sold on eBay,

---

[2]        Attachments to a complaint are considered part of the pleading. Fed. R. Civ. P. 10(c).

as long as: "(1) a numeric grade is not included in the title of the listing but may be included in the description of the listing; (2) the grading company or price guide is not referenced in the title or description; and (3) a dollar value (even if personal opinion) is not included in the title or description." (Complaint Exs. D, I.)  Dealers who try to sell such coins in a manner that do not comply with eBay's policy  are notified directly by email from eBay, with the subject line, "eBay Listing removed: Counterfeit Currency and Stamps."  (*Id.* ¶32 and Exs. D, I.)

Plaintiffs allege that eBay's policy was enacted pursuant to ANA's recommendations and was based on, among other things, the 2006 PNG/ICTA coin grading survey spearheaded by Stuppler.  (*Id.* ¶33)  Plaintiffs further allege that eBay's policy, enacted with the "complicity" of Defendants ANA and PNG, arose from a history of prejudice and animosity by ANA (led by Barry Stuppler) and PNG (led by Barry Stuppler and Ivy) against smaller grading services like Plaintiff UGS.  (*Id.* ¶46.)  Plaintiffs do not allege the source of this prejudice or animosity by ANA and PNG against smaller grading companies such as UGS, except for plaintiffs' references to the "Internet rules committee" and the CCW group. (*Id.*)

In addition to the alleged conspiracy by the Defendants, Plaintiffs allege that Defendants committed trade libel against Plaintiffs UGS and Callendrello.  In support of this claim, Plaintiffs refer to the ANA press release issued on or about September 18, 2007 addressing eBay's new policy regarding the sale of "certified coins." (*Id.* ¶35)  Plaintiffs allege that in this press release, ANA prefaced eBays' new policy by defining consumer fraud as involving a seller's "desire, ability, and opportunity" and that the new policy was eBay's effort to "try to remove the opportunity" to commit consumer fraud.  (*Id.* ¶35)  Plaintiffs allege that these statements by Defendant ANA are necessarily understood to refer to Plaintiff UGS and imply that individuals and entities that offer for sale on eBay coins graded by Plaintiff UGS have availed themselves of

the "opportunity" to commit consumer fraud.   (*Id.*)   Plaintiffs also allege that ANA's press release, which does not mention Plaintiff UGS,   contains defamatory false statements "of and concerning" UGS, which have caused damages to Plaintiffs UGS and Callandrello by imputing dishonest or unethical conduct on the part of them in their profession, trade or business.   (*Id.*, ¶43.)

Based upon these allegations, Plaintiffs purport to allege seven counts against all Defendants: (1) Civil Conspiracy to Commit Sherman Act Violations (Antitrust Conspiracy); (2) Violation Under Sherman Act §1 (Per Se and Unreasonable Restraint of Trade); (3) Violation Under Sherman Act §2 (Monopolization and Monopoly Maintenance); (4) Violation of Sherman Act §2 (Attempted Monopolization); (5) Violation of Donnelly Act New York General Business Law §340; (6) Civil Conspiracy to Commit Trade Libel Against Plaintiffs Callandrello and UGS; and (7) Trade Libel by Defendants Against Plaintiffs UGS and Callandrello.

For the reasons discussed in this memorandum, the Complaint should be dismissed in its entirety as against ANA.

## ARGUMENT

## POINT I

## LEGAL STANDARD

A district court should grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989).   In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. *Id.* at 249.   The complaint "does not need detailed factual allegations," yet it "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Xerox Corporation v. Media Sciences*

*International, Inc.*, 511 F. Supp. 2d 372,  379 (S.D.N.Y. 2007), quoting *Bell Atlantic Corp. v. Twombly* (hereafter, "*Twombly*"), 127 S. Ct. 1955, 1964-65 (2007); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").   Rather, the "[f]actual  allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"); *Hammer v. Amazon.com*, 392 F.Supp.2d 423, 430 (E.D.N.Y. 2005) ("allegations that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which a plaintiff complains are meaningless as a practical matter and, as  a matter of law, are insufficient to state a claim").

## POINT II

### PLAINTIFFS HAVE FAILED TO ALLEGE AN ANTITRUST INJURY UNDER THE FEDERAL ANTITRUST LAWS

In addition to other deficiencies with their purported antitrust claims, which will be discussed elsewhere in this memorandum, all of plaintiffs' antitrust claims should be dismissed because plaintiffs have failed to allege an antitrust injury.

Standing to sue for antitrust violations is conferred upon civil litigants by 15 U.S.C. §§ 15, 26.[3]  A necessary element in a private antitrust action is harm to competition in general,

---

[3] 15 U.S.C. §15 provides: "[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy."

15 U.S.C. § 26 provides: "any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue."

rather than merely damage to an individual competitor. *See Spectrum Sports, Inc. v. McQuillan*,

506 U.S. 447, 458 (1993). In *Spectrum Sports*, the Supreme Court held that:

> The purpose of the [Sherman] Act is not to protect businesses from
> the working of the market; it is to protect the public from the
> failure of the market. The law directs itself not against conduct
> which is competitive, even severely so, but against conduct which
> unfairly tends to destroy competition itself. It does not out of
> solicitude for private concerns but out of concerns for the public
> interest."

*Spectrum Sports*, 506 U.S. at 458. *See also Granite Partners LP v. Bear, Sterns & Co., Inc.*, 17

F. Supp. 2d 275, 297 (S.D.N.Y. 1998) (dismissing claim for violation of the Sherman Act where

the only injury alleged was to the competitor and not to competition); *Naso v. Park*, 850 F. Supp.

264 (S.D.N.Y. 1994) (same).

"The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems

from a competition-reducing aspect or effect of the defendant's behavior." *Atlantic Richfield Co.*

*v. USA Petroleum Co.,* 495 U.S. 328, 343 (1990). Thus, allegations of an injury to a competitor

are insufficient unless accompanied by allegations of injury to competition as well. *Brunswick*

*Corp. v. Pueblo Bowl-O-Mat, Inc*, 429 U.S. 477, 488 (1977) ("antitrust laws. . . were enacted for

'the protection of competition, not competitors.'" (quoting *Brown Shoe Co. v. United States*, 370

U.S. 294, 320 (1962)).

Plaintiffs do not and cannot allege the necessary antitrust injury to sufficiently state a

claim under the Sherman Act, and Counts One (Civil Conspiracy to Commit Sherman Act

Violations), Two (Violation Under Sherman Act §1), Three (Violation Under Sherman Act §2)

and Four (Violation of Sherman Act §2) must be dismissed.

One of Plaintiffs' allegations of anticompetitive conduct is that by ANA's September 18,

2007 press release about eBay's new policy, which policy did not include Plaintiff UGS as one

of the five authorized dealers, ANA implied that UGS was engaging in fraud.  (Complaint ¶¶28, 35, 42-49.)   Another one of Plaintiffs' allegations of anticompetitive conduct is that ANA published the results of 2006 PNG/ICTA survey on ANA's website. (*Id*, ¶¶26, 28.)

These allegations are insufficient, as "mere allegations of business disparagement are not the type of injuries to competition that the antitrust laws were designed to prevent." *Xerox*, 511 F. Supp. 2d at 382, quoting *Re/Max Int'l v. Realty One*, 900 F. Supp. 132, 159 (D. Ohio 1995), *aff'd*, 173 F.3d 995 (6th Cir. 1999).  Such allegations are essentially allegations of injury to a competitor, rather than allegations of injury to competition in general, and are thus insufficient to constitute an antitrust injury.  *Xerox*, 511 F. Supp. 2d at 382 (finding that plaintiff had no standing to seek monetary damages or injunctive relief under Section 2 of the Sherman Act for defendant's alleged false and disparaging statements); *see also  Arbitron Co. v. Tropicana Prod Sales, Inc.*, 1993 U.S. Dist. LEXIS 5587, at *34 (S.D.N.Y. 1993) (dismissing claim where plaintiff only alleged harm to itself, not to competition generally).

Plaintiffs also complain of eBay's policy, which plaintiffs allege was promulgated "in complicity" with ANA and PNG, which policy allowed only five grading companies to sell "certified" coins on eBay.  (Complaint ¶¶28-34).   Again, Plaintiffs make no attempt to explain how UGS's exclusion from the group of five authorized grading companies, threatened to or was driving Plaintiffs out of business such that it affected competition generally, and did not just cause economic injury to Plaintiffs.  Instead, a review of the Complaint reveals that it is riddled with allegations about how Plaintiffs (and its purported Class members) have been or will be economically injured.  (Complaint, ¶¶26, 28, 35, 45, 48, 49, 94, 100, 107, 108.)

Plaintiffs clearly are concerned only with their own alleged economic harm, rather than harm to competition in general.  Plaintiffs cannot get around the critical requirement of antitrust

injury by making conclusory allegations that competition has been or will be affected. Without any factual allegations to support how competition in general will be affected, bare conclusory allegations that Defendants' conduct affected competition is insufficient to adequately plead an antitrust injury. *Xerox*, 511 F. Supp. 2d at 382. At most, Plaintiffs allege that eBay's policy assists the five authorized grading companies in gaining an unfair advantage over other grading companies on eBay, which permits them to charge supra-competitive prices. (Complaint, ¶64, 93, 101, 105.) But, none of the Defendants are the five authorized grading companies that eBay's policy allows to sell certified coins. Plaintiffs do not and cannot allege that any of the Defendants have any influence or any agreement with the five authorized grading service companies to affect the pricing of the graders' services. Moreover, there are no allegations that the five authorized grading companies have conspired to charge supra-competitive prices. There are also no allegations as to the market share of eBay's forum these five authorized grading companies had prior to and after the eBay policy to demonstrate whether eBay's policy has affected competition in general.

Plaintiffs also cannot avoid the requirement of alleging an antitrust injury by their specious allegation that eBay's coin policy stemmed from a history of prejudice and animosity by ANA (led by Barry Stuppler) and PNG (led by Barry Stuppler and Ivy) against smaller grading services like Plaintiff UGS. (Complaint, ¶46.) Even if the Court were to assume that this allegation were true, despite any specific factual allegations to support it, this allegation would be insufficient to rescue Plaintiffs' antitrust claims. The Supreme Court has held that "even an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." *Brooke Group Ltd. V. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993).

Significantly, other actions previously brought against ANA making similar antitrust allegations have been dismissed at the pleading stage.   In *ASA Accugrade, Inc. v. Am. Numismatic Ass'n,* 370 F. Supp. 2d 213, 216 (D.D.C. 2005),[4] the court held that the complaint did not contain sufficient factual allegations to establish that the rare coin grading and authenticating market as a whole had suffered an anti-competitive injury and that such omission alone was fatal to the Sherman Act claims.   The only allegations in the complaint directed at a purported antitrust injury were the following two conclusory allegations:

> Defendants' [antitrust] violations . . . have and continue to harm competition. . . .
>
> The natural and proximate effect of the illicit agreement and overt acts of the Defendants . . . was to diminish competition in the coin grading and authenticating marketplace by removing . . . [plaintiff's] market share and allowing . . . [one competitor] to increase its market share to the point where it exclusively controls prices in the market.

*Id.,* at, 217.   These allegations were held to be insufficient and the complaint was dismissed.

Also, in *ASA Accugrade, Inc. v. American Numismatic Ass'n,* Case No. 6:05-cv-1285-Orl-19DAB, United States District Court, Middle District of Florida, Orlando Division, Plaintiffs sued ANA and others for, *inter alia,* violation of Florida antitrust laws as set forth in Florida Statute §542.18.[5]   The Court granted ANA's motion to dismiss the antitrust claims without leave to replead.   *See* ANA's Request for Judicial Notice ("RJN"), Exhibits A and B.   Among other reasons, the Florida district court in *ASA Accugrade* found that plaintiffs failed to allege harm to

---

[4]     In that action, plaintiff, a Florida corporation in the business of grading and authenticating rare coins, sued eight defendants under the Clayton Antitrust Act, 15 U.S.C. § 15 and 26, for alleged per se violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, namely, for conspiring to restrain trade unreasonably and monopolizing a market. Four of eight defendants, including ANA, filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and the motions were granted.  The Court held that the complaint failed to state a cause of action cognizable under the antitrust laws, and dismissed the Complaint as to all defendants.

[5]     Fla. Stat., §542.18 is patterned after Section 1 of the Sherman Act and provides that "[e]very contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful."  The purpose of Florida Statute §542.18 is "to complement the body of federal law prohibiting restraints of trade or commerce in order to foster effective competition." Fla. Stat., §542.16.

competition and it was not enough to allege that the plaintiffs were injured.  RJN, Exh.B, p. 9. The court relied substantially on the similar District of Columbia case, *ASA Accugrade, Inc.,* 370 F. Supp. 2d 213, for its reasoning in dismissing the antitrust claims against the defendants.  As the court found in the District of Columbia *ASA Accugrade, Inc.* case, the Florida District Court found it implausible that ANA, who is not a competitor of the plaintiffs, would conspire with others to restrain trade or to create a monopoly.  *See*  RJN, Exh. B at 14.[6]

Similarly, plaintiffs' bare conclusory allegations in this action that the Defendants' alleged conduct will affect competition or allow non-parties to charge supra-competitive prices, are fatal to the Sherman Act claims.  As the courts in the District of Columbia and Florida held, it is implausible that ANA would have conspired with others to restrain trade or create a monopoly as Plaintiffs allege  Therefore, Plaintiffs have failed to adequately allege any antitrust injury and cannot pursue monetary or injunctive relief for violation of the antitrust laws.  For these reasons, Counts One, Two, Three and Four should be dismissed.

## POINT III

### PLAINTIFFS FAIL TO STATE A CLAIM FOR CONSPIRACY OR AGREEMENT TO COMMIT SHERMAN ACT VIOLATIONS

#### A.    Plaintiffs Fail to Plead Conspiracy with Specificity

Recognizing that plaintiffs in antitrust cases have the opportunity to extort large settlements even where they do not have much of a case, simply because of the substantial expenditures of discovery, the United States Supreme Court has imposed a higher burden of pleading conspiracy under the Sherman Act. *Twombly*, 127 S. Ct. at 1966-67.  In *Twombly*, the Supreme Court held that it is no longer enough to simply plead the existence of a "conspiracy" or

---

[6]      The Court also found that plaintiffs could not state facts supporting their allegation that ANA and the defendants engaged in a collective refusal to deal or group boycott, which plaintiffs contend, is a *per se* violation of the Florida Antitrust Act. RJN, Exh. B at 10-11.

"agreement." *Twombly*, 127 S.Ct at 1966.   Instead, in order to properly allege an agreement

between anti-trust co-conspirators, the complaint must allege facts such as a "specific time,

place, or person involved in the alleged conspiracies" to give a defendant seeking to respond to

allegations of a conspiracy an idea of where to begin.   *Id.* at 1970 n.10.   As the Supreme Court

held, a bare allegation of a conspiracy is almost impossible to defend against, particularly where

the defendants are large institutions with hundreds of employees entering into contracts and

agreements daily.   *Id.* at 1966-1967.

   In *Twombly*, the Supreme Court concluded that allegations that the defendants engaged

in a "conspiracy to prevent competitive entry in their respective local telephone and/or high

speed internet services markets by, among other things, agreeing not to compete with one

another and to stifle attempts by others to compete with them and otherwise allocating

customers," were insufficient to make out a conspiracy claim. *Id.*  at 1963 n.2, 1970-71 .

   The Second Circuit has applied *Twombly's* holding that conspiracy claims asserted under

both Sections 1 and 2 of the Sherman Act must be pled with specificity.   *In re Elevator Antitrust

Litigation*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of complaint and denial of leave

to replead). In *In re Elevator*, the complaint alleged that the co-conspirator defendants:

> (a) Participated in meetings in the United States and Europe to
> discuss pricing and market divisions;
> (b) Agreed to fix prices for elevators and services;
> © Rigged bids for sales and maintenance;
> (d) Exchanged price quotes;
> (e) Allocated markets for sales and maintenance;
> (f)"Collusively" required customers to enter long-term
> maintenance contracts; and
> (g) Collectively took actions to drive independent repair
> companies out of business.

*In re Elevator*, 502 F.3d at 51.   The Second Circuit held that such allegations stated

conspiratorial activity in general terms "without any specification of any particular activities by

any particular defendant." *Id.* at 50.  The Second Circuit concluded that "[s]uch 'conclusory allegation[s] of agreement at some unidentified point [do] not supply facts adequate to show illegality.'" *Id.* at 51 (quoting *Twombly*, 127 S. Ct. at 1966).

In the case at bar, the allegations of a conspiracy involving ANA are much more tenuous than in either *In re Elevator* or *Twombly.*

In Counts One and Two, Plaintiffs allege that the conspiracy consisted of the agreements that were reached between Defendants when they formed the CCW program with the intent to "combat misrepresented listings in the Coins category" and which resulted in the formation of eBay's September 17, 2007 policy.  (Complaint ¶¶ 92, 97).  Notably, there are no allegations of the specifics of this agreement between the Defendants to form CCW, or to advise ANA of the nature of the agreement or how that alleged agreement was illegal.  There are also no allegations as to how the CCW program negatively affects competition.

While Exhibit B to the Complaint gives more insight into the CCW program, it does nothing more than highlight CCW's mission to combat fraudulent listings and to describe CCW's procedure in combating fraud.  Plaintiffs' allegations that defendant eBay's policy was promulgated "in complicity" with Defendants ANA and PNG and pursuant to ANA's recommendations also fail to provide the requisite specificity and are thus also deficient. (Complaint ¶¶ 29, 34.)  If Plaintiffs' allegations are to be taken as true, "in complicity" or at another's "recommendation" do not amount to an agreement or a concerted action sufficient to state a claim for conspiracy under the Sherman Act.

Count Two does not limit the agreement to conspire to the CCW program and eBay's policy but refers to the agreements referenced in paragraphs 20 through 47 of the Complaint. (Complaint, ¶97.)  But, nowhere in those paragraphs are there any allegations of some type of

agreement between ANA and any other Defendant. Because no specific agreement or conduct is alleged, plaintiffs cannot plead, other than on the most conclusory basis, that the supposed "agreement" constituted an unreasonable restraint of trade or was per se unlawful.

The lack of specifics with respect to the acts of ANA renders the Complaint inadequate against ANA, particularly in light of the Supreme Court's decision in *Twombly*, 127 S. Ct. 1955, and the Second Circuit's decision in *In re Elevator Antitrust Litigation*, 502 F.3d 47. The Complaint here fails to state "plausible grounds to infer an agreement," *Twombly*, 127 S. Ct. at 1965, or "'enough factual matter (taken as true) to suggest that an agreement [to engage in anticompetitive conduct] was made.'" *In re Elevator*, 502 F.3d at 50 (quoting *Twombly*, 127 S. Ct. at 1974). Although the complaint uses the buzz words "conspiratorial activity," it does not allege facts tending to show what these activities consisted of or how they were accomplished. The allegations in the complaint are the type of "labels and conclusions" that the *Twombly* and *In re Elevator* courts found to be insufficient to maintain a conspiracy claim and, therefore, Counts One and Two should be dismissed.

**B.     Courts Will Not Infer a Conspiracy When the Theory Does Not Make Economic Sense**

Courts should also dismiss a conspiracy claim when the supposed conspiracy to violate the Sherman Act "makes no economic sense." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Supreme Court has held that where a defendant had no rational motive to join a conspiracy, and a defendant's conduct is as consistent with permissible competition as with illegal conspiracy, the plaintiff's unspecific allegations do not support an inference of antitrust conspiracy. *Id.* at 588. Thus, as the court held in *Matsushita*, if the defendants "had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of

conspiracy." *Id.* at 596-97. In such a case, where an inference of conspiracy is "implausible," the court should dispose of the conspiracy claim without submitting the conspiracy issue to a jury. *Id.* at 594. Accordingly, in *Matsushita*, upon finding that the alleged conspiracy would have been "economically senseless," the Court found summary judgment proper. *Id.* at 598.

Though *Matsushita* was decided in the context of a motion for summary judgment, its reasoning has been used to decide motions to dismiss pursuant to Rule 12(b)(6). *See, e.g., United Magazine Co. v. Murdoch Mag. Distrib.*, 146 F. Supp. 2d 385, 402 (S.D.N.Y. 2001) (holding that because "plaintiffs' alleged conspiracy to engage in predatory pricing is entirely unnecessary and makes no economic sense," plaintiffs failed to state a claim under sections 1 and 2 of the Sherman Act and New York's Donnelly Act); *Cancall PCS v. Omni-Point Corp.*, 2000 U.S. Dist. LEXIS 2830, *7 n.4 (S.D.N.Y. 2000) (claim dismissed where allegations could not support a claim for predatory pricing); *Brunson Communications, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 563-64 (E.D. Pa. 2002) (Court refused to allow plaintiffs to amend in part because of the absence of any rational economic theory to support plaintiffs' allegation of conspiracy and, accordingly, it would have been futile for plaintiff to make further amendments);

Similarly, in *ASA Accugrade, Inc.*, 370 F.Supp.2d 213, the virtually identical action against the same defendants as in the instant action, the District of Columbia district court found it implausible that ANA and the other defendants such as PNG and ICTA would conspire against plaintiffs, who were coin grading service companies, and dismissed the federal antitrust claims. Specifically, the court stated:

> Moreover, the allegation [of conspiracy] is implausible on its face. The complaint offers no reason, and none is obvious, why any of the following five defendants would enter into such an agreement when, presumably, they have nothing to gain from an illegal conspiracy to restrain trade or to create a monopoly, as they are not even competitors of the plaintiff: the American Numismatic

> Association, a "federally chartered not-for-profit" entity "that acts as a quasi-governmental body over numismatic collectors and dealers" (Compl. P 3); the Industry Council for Tangible Assets, a second not-for-profit entity that holds itself out as the national trade association for the rare coin industry (id. P 7); the Professional Numismatists Guild, also a not-for-profit organization of rare coin dealers (id. P 6); RCC.COLLECTING.COINS, a coin dealers and collectors club and internet users' newsgroup (id. P 10); Heritage Capital Corporation, a rare coin dealer and auctioneer (id. P 4).

370 F. Supp. 2d at 216 n.4. The Florida District Court similarly found plaintiffs' theory of antitrust claims against ANA implausible. *ASA Accugrade, Inc. v. American Numismatic Ass'n*, Case No. 6:05-cv-1285-Orl-19DAB (RJN, Exh. B at 14.)

Here, too, the Complaint never answers the obvious, common sense question as to why ANA, a federally-chartered, not-for-profit trade association in the numismatic hobby, would conspire with the other Defendants to seek the exclusion of small, independent grading service companies in the eBay market. There is no, nor could there be, any allegation that ANA is a grading service company or is a seller of coins in the eBay forum. In other words, there is no allegation that ANA competes with Plaintiffs in the eBay forum, or any other forum for that matter, or has anything to gain from the success of any conspiracy against the Plaintiffs. Thus, the conspiracy theorized by Plaintiffs is economically implausible and Count One for Civil Conspiracy to Commit Sherman Act Violations must be dismissed.

### C. <u>Plaintiffs Fail to State a Claim for Relief for the Alleged Violation of Section 1 of the Sherman Act</u>

Even if Plaintiffs had properly pled conspiracy with the requisite specificity, Counts One and Two (Violation Under Sherman Act §1) should be dismissed because Plaintiffs cannot state a claim for relief for alleged violation of Section 1 of the Sherman Act. Section 1 of the Sherman Act prohibits "every contract, combination … or conspiracy, in restraint of trade or commerce." 15 U.S.C. §1.

RCI/5234971.5/JP5

To establish a §1 violation, a plaintiff must allege: (1) a combination or some form of concerted action between at least two legally distinct economic entities; and (2) such combination or conduct constituted an unreasonable restraint of trade either per se or under the rule of reason. *Tops Mkts., Inc. v. Quality Mkts., Inc.,* 142 F.3d 90, 95 (2d Cir. 1998); *Rome Ambulatory Surgical Center, LLC v. Rome Memorial Hospital, Inc*, 349 F. Supp. 2d 389, 406 (N.D.N.Y. 2004); *Naso,* 850 F. Supp. at 272 (dismissing allegation of restraint of trade where plaintiffs fail to state facts supporting such allegations.).

As previously discussed, Plaintiffs' failure to sufficiently allege a conspiracy is fatal to a claim for violation of Section 1 of the Sherman Act.  Even if the Court were to determine that Plaintiff properly pled a conspiracy involving ANA, however, Plaintiffs fail to allege how that alleged conspiracy constituted an unreasonable restraint of trade either per se or under the rule of reason. Determination of whether defendants' challenged conduct violates state and federal antitrust laws is guided by a rule of reason analysis unless the conduct falls into the category of "agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." *New York v. St. Francis Hosp.*, 94 F. Supp. 2d 399, 411 (S.D.N.Y. 2000) (citing *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958)).

Absent price-fixing between a supplier and distributor, vertical restraints are generally subject to "rule of reason" analysis.[7] *NYNEX Corp. v. Discon, Inc.* 525 U.S. 128, 136 (1998); *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 735-736 (1988);

---

[7]      Restraints of trade are typically categorized as either "horizontal" or "vertical." A horizontal restraint stems from an agreement among competitors at the same level of distribution, whereas a vertical restraint arises from an agreement between entities operating at different levels of the market structure, such as manufacturers and distributors. *Business Elecs. Corp. v. Sharp Elecs. Corp*, 485 U.S. 717, 730 (1988). The restraints at issue here certainly do not involve horizontal relationships because none of the Defendants are competitors of Plaintiffs.

*Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (citations omitted).   Moreover, "the Supreme Court has cautioned against the precipitate application of the per se doctrine." *Broadcast Music, Inc. v. Columbia Broadcasting Sys., Inc.*, 441 U.S. 1, 19-20 (1979). This caution has been pronounced expressly in the context of professional associations, including the ANA in the context of the numismatic hobby. *See ASA Accugrade, Inc.,* 370 F. Supp. 2d at 215-16; *FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 458-59 (1986); *ASA Accugrade, Inc. v. American Numismatic Ass'n*, Case No. 6:05-cv-1285-Orl-19DAB, RJN, Exh. B at 11.   Moreover, publishing negative statements about a business, as Plaintiffs in this action allege ANA of doing though its September 2007 press release, is not the sort of conduct that constitutes a per se antitrust violation. *ASA Accugrade*, 370 F. Supp. 2d at 216. "Such conduct is neither 'manifestly anticompetitive,' nor would it 'almost always tend to restrict competition.'" *Id.* quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000).

Under the rule of reason, before a fact finder may consider the harms and benefits of the challenged behavior, a plaintiff initially must show that the challenged action had an actual adverse effect on competition as a whole in the relevant market. *Tops Mkts.*, 142 F.3d at 96; *Rome Ambulatory,* 349 F. Supp. 2d at 407; *Granite Partners, LP, supra*, 17 F. Supp. 2d at 296. The fact that plaintiff may have been harmed as an individual competitor will not suffice. *Id.* This pleading failure is fatal to the Plaintiffs' claim under Sherman Act. As the court stated in *Jar-matt Truck Leasing Corp. v. Brooklyn Pie Co., Inc.*, 525 F. Supp. 749 (E.D.N.Y. 1981) in dismissing a Sherman Act § 1 claim:

> beyond its bald conclusions as to restraint of trade, the complaint fails to allege facts which show injury to competition, as distinct from injury to a competitor. No violation of Section 1 of the Sherman Act is possible absent proof of anti-competitive effect

> beyond the injury  to plaintiffs, and facts must be pleaded from
> which such effect can be inferred.

*Id.* at 750 (citations omitted).  As previously discussed, Plaintiffs fail to adequately allege that

anyone other than the Plaintiffs themselves were injured or prejudiced by the alleged actions of

ANA.  For these reasons, Counts One and Two must be dismissed.

Counts One and Two should be dismissed as against ANA for another reason.  There are

no allegations that support an unreasonable restraint of trade by ANA.  As the allegations

demonstrate, ANA is a trade association in the numismatic hobby.  (Complaint ¶6).  ANA did

not promulgate eBay's policy of restricting sellers of certified coins to certain grading service

companies.  As Exhibit F to the Complaint demonstrates, "eBay's determination on which

grading services would qualify for the certified classification was solely an internal eBay policy

decision."  Even if ANA in its press release expressed its approval of eBay's policy, or the press

release could be interpreted as an opinion as to the quality of any company's services, such

conduct would not give rise to an antitrust claim.  *See Zavaletta v. American Bar Association*,

721 F.Supp. 96, 98 (E.D. Va 1989).

In *Zavaletta*, plaintiff brought an antitrust claim against the American Bar Association

("ABA") in connection with the Association's promulgation of the standards of accreditation.  In

granting summary judgment to the ABA, the court held that in accrediting a law school, the ABA

was merely expressing its educated opinion about the quality of the school's program, and it was

the state supreme courts and bar that had the sole power to determine if a school's graduates are

entitled to sit for the bar examination or practice law in their states.

For these reasons, Counts One and Two must be dismissed.

## POINT IV

## PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR ALLEGED VIOLATION OF SECTION 2 OF THE SHERMAN ACT

Aside from the fact that Plaintiffs have not alleged an antitrust injury under the Sherman Act, Counts Three (Monopolization and Monopoly Maintenance) and Four (Attempted Monopolization) should also be dismissed because Plaintiffs cannot state a claim for relief for alleged violation of Section 2 of the Sherman Act.

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2.

### A.   Count Three (Monopolization and Monopoly Maintenance) Should be Dismissed

The elements of a monopolization and monopoly maintenance claim under Section 2 of the Sherman Act are: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Pepsico, Inc. v. Coca-Cola Co,* 315 F.3d 101, 105 (2d Cir. 2002), quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Failure to properly plead either of these elements is fatal to the cause of action. *Naso, supra,* 850 F. Supp. at 272 (dismissing monopolization claim where the complaint contains merely conclusory allegations of monopolization.)

"Monopoly power, also referred to as market power, is the power to control prices or exclude competition. It may be proven directly by evidence of the control of prices or the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market." *Tops Mkts., Inc.,* 142 F.3d at 97-98 (citations omitted).

Plaintiffs allege that the relevant market for purposes of a Sherman Act violation is the market for on-line certified coin auctions in the United States. (Complaint, ¶62.) Plaintiffs do not, nor can they, allege that ANA has any monopoly power within the relevant market. The only Defendant that the Complaint alleges to have monopoly power is eBay. (Complaint, ¶¶51, 53, 104.) Therefore, Count Three must be dismissed as against ANA.

### B. Count Four (Attempted Monopolization) Fails to State a Claim

Attempted monopolization is established when a plaintiff can show "(1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) has a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc., supra,* 506 U.S. at 456; *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 841 (2d Cir. 1980); *Naso,* 850 F. Supp. at 272 (dismissing allegations of attempted monopolization when plaintiffs alleged neither a dangerous probability that defendants' attempt to monopolize will succeed nor have facts sufficient to infer that defendants possess a significant market share from which, together with the allegation of anticompetitive conduct, the Court could infer a dangerous probability of success).

Plaintiffs do not allege any specific intent by ANA to monopolize within the relevant market. As Plaintiffs allege, ANA is a trade association. (Complaint, ¶6.) ANA does not grade coins or sell/buy coins. Even if specific intent could be inferred, it is demonstrably clear that ANA does not possesses the requisite market power to suggest a dangerous probability that it could assume a monopoly position in the market. This is because ANA does not compete with Plaintiffs. To allege a dangerous probability of achieving monopoly power, plaintiff must plead that defendants possess a sufficient share of the relevant market. *AD/SAT v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999); *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 570 (2d Cir. 1990); see *Tops Mkts.*, 142 F.3d at 100. ANA does not compete in the market for on-

line certified coin auctions and has no share of the market, and there is thus no dangerous probability of ANA achieving monopoly power.

In fact, Plaintiffs do not allege a single fact to demonstrate ANA's supposed actual or probable market power or any other reason to find a dangerous probability of ANA achieving monopoly power.   That omission is fatal to plaintiffs' claims.   *Association of Retail Travel Agents, ltd. v. Air Transport Association of America*, 635 F. Supp. 534, 538 (D.D.C. 1986) (dismissing allegations of violating the Sherman Act where the elements of the offense were stated in only a conclusory fashion).

## POINT V

### PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR ALLEGED VIOLATION OF THE DONNELLY ACT

The Donnelly Act, N.Y. Gen. Bus. Law § 340, states that "every contract, agreement, arrangement or combination whereby a monopoly ... is or may be established or maintained, or whereby competition ... may be restrained" is illegal. N.Y. Gen. Bus. Law § 340(1). The Donnelly Act was patterned after the Sherman Act and has been narrowly construed to encompass only those causes of action falling within the Sherman Act, and is generally interpreted in accordance with federal precedent.   *Great Atlantic & Pacific Tea Co., Inc. v. Town of East Hampton*, 997 F. Supp. 340 (E.D.N.Y.1998); *People v. Rattenni*, 81 N.Y.2d 166, 171 (1993); Anheuser-Busch, Inc. v. Abrams, 71 N.Y.2d 327, 335, (1988); *State of New York v. Mobil Oil Corp.*, 38 N.Y.2d 460 (1976).

ANA incorporates its arguments regarding the dismissal of the Sherman Act claims, and since the Plaintiffs have failed to allege a federal antitrust claim under the Sherman Act against ANA,  the Donnelly Act claim in Count Five should also be dismissed.

## POINT VI

## PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF FOR TRADE LIBEL

Plaintiffs allege two counts based on trade libel, Count Six (Civil Conspiracy to Commit Trade Libel Against Plaintiffs Callandrello and UGS) and Count Seven (Trade Libel Against Plaintiffs Callandrello and UGS).  Both of these claims should be dismissed.

### A.    Conspiracy is Not in Itself a Cause of Action

Under New York law, "a mere conspiracy to commit a [tort]  is never of itself a cause of action." *Kasada, Inc. v. Access Capital, Inc.* 2004 U.S. Dist. LEXIS 25257, *43, 44 (S.D.N.Y. 2004) quoting *Alexander & Alexander v. Fritzen*, 68 N.Y.2d 968 (1986) (citations omitted). Therefore, Count Six should be dismissed.

### B.    Plaintiffs Failed to Sufficiently Plead Trade Libel

Trade libel is the knowing publication of false and derogatory material regarding another's business, that is calculated to prevent others from doing business with the defamed party or otherwise interferes with its business relationships. *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333 (S.D.N.Y. 2000); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F. Supp. 2d 235, 239 (S.D.N.Y. 1999).

The party alleging trade libel must allege that the publication of the false material was a substantial factor in inducing others not to have business dealings with it.  *Waste Distillation Tech. v Blasland & Bouck Engrs.*, 136 A.D.2d 633 (2nd Dept 1988).  There are four elements to a trade libel claim: (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages. *Computech Int'l, Inc. v. Compaq Computer Corp.*, 2002 U.S. Dist. LEXIS 20307 at *5 (S.D.N.Y. Oct. 24, 2002).

Here, Plaintiffs UGS and Callandrello allege that ANA engaged in trade libel when in its press release on or about September 18, 2007, ANA prefaced the announcement of the new eBay

policy by defining consumer fraud as involving a seller's "desire, ability, and opportunity" and stated that the eBay's policy was their effort to "try to remove the opportunity" to commit consumer fraud. (Complaint, ¶136). Plaintiffs allege that these statements by ANA are understood to mean that those grading service companies that are not the five approved graders to sell "certified" coins on eBay have availed themselves of the "opportunity" to commit consumer fraud. (*Id.*) Plaintiffs further allege that ANA's press release permits the inference that Plaintiff UGS and other members of the Class are not a reliable and accurate grading service and serves as a mere vehicle for fraud. (*Id.*)

The ANA press release, however (attached as Exhibit F to the Complaint), does not contain any false statements about Plaintiffs or the putative class. In fact, no grading service company is ever mentioned. There are also no allegations in the Complaint that any statement in ANA's press release was false. Accordingly, the trade libel claims must be dismissed.

## POINT VII

### PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD

If the Court finds that Plaintiffs have failed to state a claim for relief, Plaintiffs should not be permitted to amend the Complaint, as this would be a futile exercise. *In re American Exp. Co. Shareholder Litigation.*, 39 F.3d 395, 402 (2d Cir. 1994); *United Magazine Company, supra,* 146 F. Supp. 2d at 415-16 (dismissing without leave to replead Sherman Act violations and Donnelly Act violations); *Brunson Communications, Inc.,* 239 F. Supp. 2d at 573 (refused to grant leave to amend where the absence of any rational economic theory indicate that it would be futile for Plaintiff to make further amendment, and Plaintiff already amended the Complaint once before).

Here, too, it would be futile to allow Plaintiffs to replead. There can be no valid theory under which plaintiffs can allege that ANA violated Sections 1 or 2 of the Sherman Act or the Donnelly Act. ANA does not compete in the relevant market of the online coin auction on eBay,

and no amendment could change that.  ANA has no interest in which grading services are authorized by eBay to sell "certified" coins.  ANA's interest is more general in trying to make the numismatic hobby safe and enjoyable to the public.  Moreover, there is no set of facts that could be alleged that could create a claim of monopolization or attempted monopolization.  Regardless of how plaintiffs spin the facts, the simple fact is that ANA does not compete with plaintiffs, has no market share and does not present a dangerous probability of achieving monopoly power.

There can also be no valid theory under which Plaintiffs can state in good faith, that ANA committed trade libel against Plaintiffs UGS or Callandrello.  ANA's statements in its September 18, 2007 press release, announcing eBay's policy, should not be manipulated to extract some inference that the statement was targeted at accusing Plaintiffs UGS and Callandrello of committing consumer fraud.

Plaintiffs have already amended their complaint once, and further amendments would not cure the defects in the purported claims against ANA.

RC1/5234971.5/JP5

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant American Numismatic Association respectfully

submits that the Court grant its motion to dismiss in its entirety, without leave to replead.

Dated: New York, New York.
      February 6, 2009

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY
17 State Street, Suite 2400
New York, NY
(212) 668-5927


By:  /s/ Jung H. Park
     ANDREW L. MARGULIS (AM 9234)
     JUNG H. PARK (JP 4500)
     Attorneys for Defendant
     AMERICAN NUMISMATIC
     ASSOCIATION

RC1/5234971.5/JP5