UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
:
UNIVERSAL GRADING SERVICE, JOHN :
CALLANDRELLO, JOSEPH KOMITO and VADIM : Index No.: 08 CV 3557 (CPS)(RML)
KIRICHENKO, individually and on behalf of others :
similarly situated :
:
                 Plaintiffs, :
:
  vs. :
:
eBAY, INC., a foreign corporation, AMERICAN :
NUMISMATIC ASSOCIATION, a foreign non-profit :
association, and PROFESSIONAL NUMISMATISTS :
GUILD, INC., a foreign corporation, BARRY STUPPLER :
& COMPANY, LLC :

Defendants.
------------------------------------------------------------------x

**DEFENDANT PROFESSIONAL NUMISMATISTS GUILD, INC.'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

COLE SCOTT & KISSANE, P.A.
4686 Sunbeam Road
Jacksonville, Florida 32257
(904) 672-4000

and

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
10055.00079

Of Counsel:
Robert O'Quinn
Thomas A. Leghorn
Jennifer Alampi

## PRELIMINARY STATEMENT

Plaintiffs filed two Memoranda of Law that appear to apply to defendant PNG's motions to dismiss. The first brief, entitled the "Memorandum of Law in Opposition to Defendant PNG's Motion and Letter Brief to Dismiss Plaintiffs' Second Amended Complaint," appears to relate solely to the lack of personal jurisdiction over PNG. The second brief, entitled "Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint" appears to relate to plaintiffs' failure to state a claim upon which relief can be granted.

With respect to the jurisdictional issues, plaintiffs simply allege in conclusory fashion that personal jurisdiction exists. Plaintiffs go through great lengths to argue that PNG's passive website is an interactive website directed at New York; however, plaintiffs cite to no factual support for these conclusory allegations. Plaintiffs also ignore the overwhelming law and evidence that PNG's passive website is an insufficient basis to confer personal jurisdiction over PNG in New York.

Plaintiffs' general Memorandum of Law concerning the 12 (b) (6) aspect of the case is primarily directed at defendants eBay and ANA. Plaintiffs' brief and lack of significant mention of PNG makes it clear that defendant PNG is not a proper defendant in this matter. The purported factual allegations as against PNG are insufficient to state a claim upon which relief can be granted. As respects PNG, plaintiffs have failed to adequately set forth the grounds of any entitlement to relief.

## THE SECOND AMENDED COMPLAINT MUST BE DISMISSED AGAINST PNG DUE TO LACK OF PERSONAL JURISDICTION OVER PNG

Plaintiffs appear to allege that because all doubts should be resolved in plaintiffs' favor, this Court must automatically find that personal jurisdiction exists as respects

1

defendant PNG despite the affidavit of Mr. Brueggmeman (dated February 6, 2009 and submitted with PNG's initial motion to dismiss) which clearly and unambiguously demonstrates that:

1. PNG does not and never has sold or graded coins or paper money. (Brueggmeman Aff. at ¶5);

2. PNG has never had an office, property, telephone number or mailing address in New York. (Brueggmeman Aff. at ¶6);

3. PNG has never operated, conducted, engaged in or carried on a business or business venture in the state of New York. (Brueggmeman Aff. at ¶8);

4. PNG's website merely makes information available, including PNG's address, telephone and facsimile numbers and e-mail address, which allows Internet users to e-mail PNG. <u>It does not permit a user to exchange information with PNG's host computer. PNG does not and has never solicited New York residents or engaged in business with New York residents over the Internet.</u> (Brueggmeman Aff. at ¶12) (emphasis added);

5. PNG has never, through its website or otherwise, purposefully directed its activity in a substantial way to New York, or any other state, including any state in which PNG has held a membership meeting. (Brueggmeman Aff. at ¶13);

The above-referenced facts and statements remain unchallenged by plaintiffs. Plaintiffs have set forth no countervailing affidavits or facts and simply allege in conclusory fashion that personal jurisdiction exists. As there are no factual allegations to support this conclusion, there are no doubts, and plaintiffs' action should be dismissed as against PNG for lack of personal jurisdiction.

2366755.1

### A. Personal Jurisdiction As Respects PNG Does Not Exist Under CPLR § 302

Plaintiffs concede that New York's long arm statute only confers personal jurisdiction over a non-domiciliary if that person or entity:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . .

NY CLS CPLR § 302 (a).

Plaintiffs further concede that they must make "a prima facie showing or jurisdiction through [their] own affidavits and supporting materials." *See Plaintiffs' Memorandum of Law in Opposition to PNG's Motion dated April 24, 2009 at page 2.* Noticeably absent from plaintiffs' papers are any affidavits or supporting materials to support their conclusory allegations that PNG (1) transacted business in New York, (2) committed a tortious act in New York; or (3) committed a tortious act outside of New York causing injury in New York while regularly doing or soliciting business in New York or otherwise deriving substantial revenue from services rendered in New York. The

3

reason for plaintiffs' failures is simple -- they are unable to satisfy the requirements of CPLR § 302 as respects PNG.

Plaintiffs assert that their "defamation claims are arising out of Defendant PNG's activities in New York." *See Plaintiffs' Memorandum of Law in Opposition to PNG's Motion dated April 24, 2009 at page 7-8.* Despite the plain language of CPLR § 302 (a) (3) that it does not apply to defamation claims, plaintiffs nonetheless assert that it does. *See Plaintiffs' Memorandum of Law in Opposition to PNG's Motion dated April 24, 2009 at page 9-11.* Indeed, as the *Knight-McConnell* Court noted, "courts are also instructed to decline jurisdiction over claims that attempt to avoid the requirements of New York's long-arm statute by merely restating a defamation claim under a different name." *Knight-McConnell*, 2005 U.S. Dist. LEXIS 11577 at n. 5.

Plaintiffs' attempt to shoe horn their allegations into CPLR § 302 (a) (1) because § 302 (a) (3) does not confer personal jurisdiction over defendants for tortious acts of defamation. Plaintiffs' efforts, however, are directly refuted by Mr. Brueggmeman's affidavit which clearly sets forth that PNG does not transact business in New York or contract anywhere to supply goods or services in New York. The Second Amended Complaint identifies no goods or services provided by PNG within the State of New York. It likewise cites no factual support for the conclusory allegation that PNG transacts business in New York. Thus, under the *Legros v. Irving*, 327 N.Y.S.2d 371 (1st Dep't 1997) case cited by plaintiffs, their action must be dismissed. In *Legros*, the Court found personal jurisdiction over the defendant for the plaintiff's claim of defamation because the media where the alleged defamatory comments were contained was a book that had significant contacts with New York as it was "in part researched in this State by

4

defendant Irving; negotiations with McGraw-Hill took place in New York; the contract with McGraw-Hill was executed in New York; the book was printed in New York." *Id.* at 56. Here, plaintiffs have not alleged any facts sufficient to find a business transaction on the part of PNG in New York.

Plaintiffs' jurisdictional claim here rests solely upon PNG's website. "Whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." *Citigroup Inc. v. City Holding Co. et al.*, 97 F. Supp.2d 549, 565 (S.D.N.Y. 2000).

PNG's passive website is insufficient to confer jurisdiction pursuant to CPLR § 302 (a) (1). As set forth in the Brueggmeman affidavit, the PNG website does not permit a user to exchange information with PNG's host computer. PNG does not engage in business with New York residents over the Internet. (Brueggmeman Aff. at ¶12).

Passive websites, like PNG's, primarily make information available to viewers but do not permit an exchange of information. Such websites do not confer personal jurisdiction. See *Aqua Prods., Inc. v. Smartpool, Inc.*, 2005 WL 1994013 (S.D.N.Y. 2005); *Heidle v. The Prospect Reef Resort, Ldt.*, 364 F. Supp.2d 312 (W.D.N.Y. 2005); *Shultz v. Ocean Classroom Found., Inc.*, 2004 WL 488322 (S.D.N.Y. 2004); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F.Supp.2d 376 (S.D.N.Y. 2002); *Spencer Trask Ventures v. Archos S.A.*, 2002 WL 417192 (S.D.N.Y. 2002). Passive websites have "been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant." *Citigroup Inc.*, 97 F. Supp.2d at 565 (noting that a website simply posting information about products and services would constitute a passive website).

Because the PNG website "does not permit a user to exchange information with PNG's host computer" (Brueggmeman Aff. at ¶12), it is a passive website and not an interactive one. An interactive website allows "the exchange of information between users in the forum state and the defendant, and may be a basis for jurisdiction depending on the level and nature of exchange." *Knight-McConnell v. Cummins*, 2005 U.S. Dist. LEXIS 11577 *9 (S.D.N.Y. 2005) (citing *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Here, plaintiffs allege that personal jurisdiction exists because the website "allows" individuals in any state in the U.S. "to join their email list" or "join PNG through online application procedure. . . ." *See Second Amended Complaint at ¶14*. Such an exchange of information, if it could even be characterized as an exchange of information, does not raise the level and nature required to confer jurisdiction over a non-domiciliary. It is not the bona fides of membership that plaintiffs challenge. *See Citigroup Inc.*, 97 F. Supp. 2d at 566 (noting "The cause of action arises from this transaction of business because it is precisely the bona fides of these products and services that Citigroup challenges") (internal citations omitted).

In *Seldon v. Direct Response Techs.*, 2004 U.S. Dist. LEXIS 5344 (S.D.N.Y. 2004), the Southern District held that there was no personal jurisdiction over the defendant because it did not transact business in New York. The Court found that out-of-state website with interactive message boards available to New York users was insufficient to confer personal jurisdiction over the defendant. *Id.* The Court specifically noted:

> Seldon's causes of action appear to arise entirely from defendants' maintenance of a website that has interactive message boards available to New York users. However, Seldon does not allege that the message boards specifically

6

> target New Yorkers, or that defendants' publication of Lunt's message on the boards was aimed at New York users.

*Id.* at *18. Likewise, here, plaintiffs has not alleged that the PNG website specifically targets New Yorkers. This is simply because the website does not.

Plaintiffs' reliance on *Knight-McConnell*, 2005 U.S. Dist. LEXIS 11577 is misplaced. The *Knight-McConnell* Court held that defendant's website was insufficient to confer jurisdiction over the defendant:

> Defendant's online activities consist of postings regarding plaintiff, and as such, do not provide a basis for jurisdiction. The sole connection between plaintiff's cause of action and New York – the fact that plaintiff, the subject of defendant's postings, is a resident of New York – is not sufficient to support a finding of jurisdiction under 302(a)(1). . . . Furtermore, defendant attests that 'no web page on any of my web sites or public message postings have ever been directed at the forum state of New York. Anything I advertise, publish, or state as a matter of free speech is intended to be read by the entire worldwide internet audience, and is not directed at any specific forum.' . . . As there is nothing in the record to suggest that defendant purposefully availed herself of the benefits and protections of the laws of New York, there is no jurisdiction under section 302(a)(1).

*Id.* at *10.

Plaintiffs' reliance on *Hsin Ten Enterprise USA, Inc. v. Clark Enterprises et al.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000 is misplaced). In that case, the Court found that there was personal jurisdiction over the defendants pursuant to CPLR § 302 (a) (1) because the defendant had sold 18 products within the State of New York through its website, tradeshows, and referrals, which the Court held constituted "transacting business" in New York. *Id.* at 455. Further, the *Hsin* Court specifically stated that:

7

"Personal jurisdiction over a defendant is not appropriate simply because the defendant maintains a website which residents of New York may visit." *Id.* at 456.

Plaintiffs' reliance on *Starmedia Network, Inc. v. Star Media Inc.*, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. 2001) is likewise misplaced. The Court noted that the defendant "stipulated that it receives substantial revenue from interstate commerce" and "admits that it solicits business nationwide via the website and one of the purposes of its website is to attract new customers, including customers from New York." In contrast, "PNG does not and never has sold or graded coins or paper." Brueggmeman Aff. at ¶5. In addition "PNG does not had has never solicited New York residents or engaged in business with New York residents over the Internet. PNG has never, through its website or otherwise, purposefully directed its activity in a substantial way to New York, . . ." Brueggmeman Aff. at ¶12-13.

### B. Due Process Requirements Have Not Been Satisfied

As set forth above and more fully in PNG's other applications to this Court, plaintiffs are unable to establish that PNG has purposefully availed itself to the privilege of conducting activities within New York. Any contact that PNG might arguably have with New York is marginal at best and does not rise to the level of minimum contacts as PNG has no "continuous or systematic" contact with the State of New York.

Plaintiffs allege that commencing in 2001 PNG formed an "internet rules committee"[1] and that in or about 2006 PNG, in conjunction with the Industry Council for Tangible Assets (ICTA) commissioned a survey of coin dealers asking their opinions of various rare coin authentication and grading services.[2] The Second Amended Complaint

---

[1] First Amended Complaint at ¶ 21; Second Amended Complaint at ¶25.
[2] First Amended Complaint at ¶ 26; Second Amended Complaint at ¶30.

8

does not allege that any of these activities occurred in New York, the point in time these acts began and when, if at all, they ceased, or whether any of PNG's purported acts occurred at any time material to this action.

For the reasons discussed above, PNG respectfully requests that an Order be entered dismissing the action as against PNG for lack of personal jurisdiction.

## THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

When faced with a motion to dismiss pursuant to Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plaintiffs here have failed to do so and, instead, rely on speculative and conclusory allegations refuted explicitly by the affidavit of Mr. Brueggmeman.

Of significance, a reading of plaintiffs' motion clearly establishes that plaintiffs' claims are directed at eBay and ANA. The allegations as against PNG are ancillary to plaintiffs' allegations as set forth in the Second Amended Complaint and claims as set forth in their "Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint."

Plaintiffs concede that their obligation to provide grounds of their entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See *Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint* at 18. Nonetheless, plaintiffs have not met this burden as respects PNG.

### A. Plaintiffs Have Failed to State a Valid Claim for Conspiracy to Commit Sherman Act Violations As Against PNG

As set forth by the Supreme Court in *Twombly*, a complaint must allege facts such as a "specific time, place, or person involved in the alleged conspiracies." *Twombly*, 127 S. Ct. at 1970 n.10. Plaintiffs have not done so.

Although the Second Amended Complaint contains words like "conspiratorial activity", it does not allege any new facts tending to show what these activities consisted of or how they were accomplished. Plaintiffs conclude that defendants engaged in a conspiracy without alleging facts sufficient to support an allegation that the defendants had reached any sort of agreement and acted in concert. The Second Amended Complaint has all the buzz words but none of the factual support.

At page 20 of their 73 page brief, plaintiffs state that "Taking into consideration that Defendant eBay profits form the implemented policy through increased auction fees, the SAC provided both 'plausible grounds to infer an agreement' and 'enough factual matter' to suggest that an agreement was made." At page 21 of their brief, plaintiffs state: "Taking into consideration that Defendant ANA's members are all coin investors who profit when the prices of the certified coins increase, the SAC here not only states 'plausible grounds to infer an agreement' ... but also 'enough factual matter (taken as true) to suggest that an agreement [to restrain trade of certified coins in the online auctions market]was made.'" Such statements have no bearing whatsoever on any acts alleged by PNG and is an insufficient argument to establish an agreement on the part of PNG to engage in any type of concerted activity.

"To adequately set forth a conspiracy, a complaint must provide facts that reasonably tend [ ] to prove that the defendants had a conscious commitment to a

10

common scheme designed to achieve an unlawful objective." *Mover's & Warehousemen's Ass'n of Greater New York, Inc. v. Long Island Moving & Storage Ass'n, Inc.*, 1999 WL 1243054, at *3 (E.D.N.Y. 1999) (quotation marks omitted).

Plaintiffs' Second Amended Complaint focuses on the alleged actions undertaken by eBay and ANA. *See e.g.* Second Amended Complaint at ¶¶ 27-39. The sole allegations related to conspiracy as alleged against PNG focus on PNG's formation of an Internet rules committee. Such allegations show nothing more than parallel conduct at best. As set forth in the Brueggeman affidavit, PNG joined with the Industry Council for Tangible Assets (ICTA) in conducting the 2006 joint survey of rare coin authentication and grading services in furtherance of PNG's mission of making the numismatic hobby safe for collectors and investors. See Brueggeman Affidavit at ¶15. PNG explained in a press release that the survey results do not necessarily reflect the views of PNG or any particular PNG member. See Brueggeman Affidavit at ¶16.

A § 1 violation based on "tacit collusion" or "conscious parallelism" requires more than a bare showing of parallel conduct. *See, e.g., Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 541, 74 S.Ct. 257, 98 L.Ed. 273 (1954) ("[T]his Court has never held that proof of parallel business behavior conclusively establishes agreement or, phrased differently, that such behavior itself constitutes a Sherman Act offense.... '[C]onscious parallelism' has not yet read conspiracy out of the Sherman Act entirely."); *see also Twombly*, 127 S.Ct. at 1964 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of

rational and competitive business strategy unilaterally prompted by common perceptions of the market.").

There are no facts plead establishing PNG's conscious commitment to a common scheme designed to achieve an unlawful objective. As such the Second Amended Complaint must be dismissed.

### B. Plaintiffs Have Failed to Allege An Antitrust Injury

In alleging a violation of Section 1 of the Sherman Act under the rule of reason, a plaintiff bears the burden of showing that the challenged action has an actual adverse effect on competition as a whole in the relevant market. *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993). It is not sufficient for plaintiffs merely to show that they have suffered injury due to the alleged agreement; they must also demonstrate "an actual adverse effect on competition market-wide." *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 244 (2d Cir. 1997).

Despite plaintiffs' claims to the contrary, styling the Second Amended Complaint as a Class Action does not automatically establish an antitrust injury. The allegations cited by plaintiffs as alleging an "adverse effect on competition in the online auctions market", Paragraphs 74-78 of the Second Amended Complaint highlight the individual nature of the Complaint by commenting on the "direct and significant injury to the Plaintiffs." *See* Second Amended Complaint at ¶74.

Plaintiffs set forth no facts in the Second Amended Complaint from which the Court could infer that PNG's alleged actions had "any anticompetitive effect beyond the injury to plaintiffs." *See Granite Partners. L.P v. Bear, Stearns & Co., Inc.* 17 F.Supp.2d 275, 297-98 (S.D.N.Y. 1998).

Accordingly, the Second Amended Complaint must be dismissed for failing to allege an antitrust injury with an actual adverse effect on competition as a whole in the relevant market.

### C. Plaintiffs Have Failed to Properly Plead A Violation of Section 1 of the Sherman Act As Against PNG

Counts Two and Three of the Second Amended Complaint do not make specific reference to PNG. The focus of these allegations is "eBay's [purported] policy." *See* Plaintiffs' Memorandum of Law at page 46. Further, plaintiffs do not refute any of PNG's arguments concerning the purported tying and boycott claims.

In their Memorandum of Law at page 47, Plaintiffs claim that there is an implicit tying agreement because "consumers are able to purchase certified coins in the relevant market only if they were graded by the authorized graders, . . ." Plaintiff cite to no case law to support this indirect tying argument. Moreover, however, PNG "does not and never has sold or graded coins or paper money." *See* Brueggmeman Aff. at ¶5. Thus, plaintiffs' allegations relating to tying must be dismissed as against PNG.

With regard to the alleged boycott claims, the allegations are again directed at defendant eBay and not PNG. Plaintiffs have failed to establish any type of horizontal agreement against direct competitors to boycott other direct competitors. PNG does not sell or grade coins and does not compete with plaintiffs in the coin dealing market. *See* Brueggmeman Aff. at ¶5. Plaintiffs' self serving statement that "it is Plaintiffs' position that ANA and/or PNG are coin dealers," does not make PNG a coin dealer. *See* Plaintiffs' Memorandum of Law at page 53. Plaintiffs have not alleged any facts to support this conclusory and false statement.

13

For plaintiffs to establish a cause of action for group boycott under a vertical agreement plaintiffs must establish that the alleged act "has had an actual adverse effect on competition as a whole in the relevant market." *Floors-N-More*, 142 F. Supp.2d at 501. Plaintiffs have failed to do so as set forth above.

Thus, plaintiffs undertake efforts to argue that the Court should apply the "rule of reason," which requires plaintiff to establish "the existence of an illegal contract" and a "showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market." *Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 542-543 (2d Cir. 1993). Here, plaintiffs have not set forth facts sufficient to allege an illegal contract between PNG and any of the other named defendants. Further, plaintiffs have not sufficiently set forth any factual allegations to support a claim of an actual adverse effect on competition as a whole. Plaintiffs allege that they are injured and thus competition is injured. Without more, plaintiffs' claims must fail.

Accordingly, the Second Amended Complaint must be dismissed for failing to allege a violation of Section 1 of the Sherman Act.

### D. Plaintiffs Have Failed to Properly Plead A Violation of Section 2 of the Sherman Act As Against PNG

To state a claim of conspiracy to monopolize under Section 2, a Plaintiffs must allege (1) a concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize. *Electronics Communications Corp.*, 129 F.3d at 246. "Intent alone is not sufficient, however; the defendant's power in the relevant market must be established, to establish whether the defendant is a monopolist or is threatening to become one." *Id.* Setting aside the conspiracy issues addressed above, Plaintiffs have

not alleged a specific intent to monopolize on the part of PNG. At best, plaintiffs allege that PNG "helped the five authorized graders to acquire and maintain monopoly power." *See* Second Amended Complaint at 139. Such an allegation is insufficient to set forth a violation of Section 2 of the Shearman Act.

### E. Plaintiffs Have Failed to Properly Plead A Violation of the Donnelly Act

As demonstrated above and more fully in PNG's other moving papers, the allegations under the Sherman Act are insufficient to state a claim against PNG, and the same logic and precedent applies to the allegations under the Donnelly Act. There are no facts plead in the Second Amended Complaint with respect to PNG's involvement in any arrangement or agreement to establish a monopoly or restrain trade.

### F. Counts Seven and Eight of the Second Amended Complaint Must Be Dismissed

Plaintiffs allege no facts indicating that any statement made by PNG denigrated the quality of plaintiffs' business goods or services. Plaintiffs have not refuted PNG's position. Accordingly, as there are no statements attributed to PNG (and that Plaintiffs have not alleged the requisite falsity of any alleged statements or the requisite malice) the claims of trade libel in Counts Seven and Eight must be dismissed for failure to state a claim.

### III. CONCLUSION

As has been demonstrated above, the Second Amended Complaint does not cure any of the jurisdictional or pleading deficiencies of the First Amended Complaint. Accordingly, the action should be dismissed as against PNG for: (1) lack of personal jurisdiction and (2) failure to state a claim upon which relief can be granted. Plaintiffs' claim should be denied without leave to re-plead.

Dated: White Plains, New York
May 8, 2009

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Thomas A. Leghorn
Jennifer Alampi
Attorneys for Defendant
PROFESSIONAL NUMISMATICS
GUILD, INC.
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000
10055.00079


COLE SCOTT & KISSANE, P.A.

By: /S/ _____
Robert E. O'Quinn, Jr.
Attorneys for Defendant
PROFESSIONAL NUMISMATICS
GUILD, INC.
4686 Sunbeam Road
Jacksonville, Florida 32257
(904) 672-4000

2366755.1